TRANSIT COMMISSION ET AL. *v.* UNITED STATES
ET AL.

No. 535.   Argued March 13, 14, 1933.—Decided April 10, 1933

122

*Mr. George H. Stover*, with whom *Messrs. John J. Bennett, Jr., Wendell P. Brown*, and *Philip Hodes* were on the brief, for appellants.

Mr. *John Lord O'Brian,* with whom *Solicitor General Thacher* and *Messrs. Charles H. Weston, Hammond E. Chaffetz, Daniel W. Knowlton,* and *H. L. Underwood* were on the brief, for the United States and Interstate Commerce Commission, appellees.

Mr. *Alfred A. Gardner,* with whom *Messrs. D. P. Williams* and *Joseph F. Keany* were on the brief, for the Pennsylvania and Long Island Railroad Companies, appellees.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Each appellant sued the United States and the railroad companies to set aside an order made by the Interstate Commerce Commission under § 1 (18) of the Interstate Commerce Act. The Commission intervened. The order certifies that the present and future public convenience and necessity require that upon terms specified the Long Island continue to operate over tracks, and to share in the use of other facilities, of the Pennsylvania Tunnel and Terminal Railroad Company. Appellants applied for a temporary injunction, the cases were consolidated, the evidence before the Commission was introduced and, the cases having been submitted on such application and upon the merits, the court made findings of fact, stated its conclusions of law and entered a decree that the preliminary injunction be denied and that the bills be dismissed. 1 F. Supp. 595.

Appellants contend that the use by the Long Island of the terminal company's tracks and facilities is not within the jurisdiction of the Interstate Commerce Commission but is governed by § 148 of the New York Railroad Law. That section provides that, subject to the permission and approval of the public service commission (the transit commission is its successor), any corporation owning or operating a railroad route may contract with any other such corporation for the use of their respective roads. And appellants maintain that the Interstate Commerce Commission was not authorized to issue the certificate: that § 1 (18) does not apply to railroad operation under trackage rights; that, if it does, it is not retroactive and does not apply to a use which began before the enactment, and that the Commission is without power, to the exclusion of the state authorities, to pass on or prescribe the terms and conditions of the agreement made by the carriers to govern such operation.

The Pennsylvania railway station and yards in midtown Manhattan constitute the eastern terminus of that system. In addition to such station and yards the terminal properties include four single-track tunnels extending easterly under the city and East river, the Sunnyside yard in Queens, and connecting lines. The Long Island Railroad connects with that yard. The legal title of the terminal properties is in the terminal company. The Pennsylvania Railroad Company is its lessee and owns all its stock and practically all that of the Long Island.

The station was opened for use in 1910, and in September of that year the Long Island commenced to operate its trains over the terminal lines of railroad through the tunnels, to and from the station and yards in Manhattan. This operation was pursuant to an agreement made by the carriers for which they obtained the approval of the first district state public service commission. The rental payable by the Long Island was, in

1920 and again in 1922, increased, with the approval of the public service commission, and, after 1921, of its successor, the transit commission. In 1923 the carriers sought approval of an amendment of the agreement that would involve a further increase. The application was denied. In March, 1925, the carriers submitted another agreement. After modification to lessen the proposed rental, the transit commission, July 28, 1925, approved. In November the carriers made application for approval of a higher charge. In December the commission disallowed it but granted extension to January 1, 1927, of the agreement which it had approved July 28, 1925.

In 1929 the carriers, invoking § 1 (18), applied to the Interstate Commerce Commission for a certificate of public convenience and necessity authorizing the Long Island to continue operation at the rental rejected by the transit commission in December, 1925. The Interstate Commerce Commission held that it had jurisdiction but denied the application without prejudice upon the ground that the agreement imposed unreasonable terms on the Long Island. 162 I.C.C. 218. December 27, 1930, the carriers submitted a proposed agreement somewhat more favorable to the Long Island. February 8, 1932, the Commission approved and, subject to conditions specified, granted the certificate. 180 I.C.C. 439. The carriers accepted the prescribed terms. In addition to the facts above stated, the court found that between January 1, 1927, and the consummation of the agreement pursuant to the certificate, the Long Island was a tenant at will and that the carriers continued during that period to operate under the conditions approved July 28, 1925.

The Commission found, and it is conceded, that public convenience and necessity require that the Long Island continue to use the lines and other facilities covered by the trackage agreement. It declared that the reasonableness of a joint facility rental is a matter of public inter-

est, as well as one affecting the operations of the carriers, and should be considered in deciding upon public convenience and necessity; that the financial as well as the transportation features of the carriers' application, might be dealt with under the authority conferred by § 1 (18); and that in cases of extensions of operations under trackage rights, the cost is not less important than in cases of extension by construction, acquisition, or lease. Appellants raise no question as to the sufficiency of the evidence to sustain the order or as to the reasonableness of the rentals or other terms of the agreement.

The district court found that operation under trackage agreements over existing lines of another carrier may affect interstate commerce; that an extension, whether arising out of such agreements or otherwise, has a vital effect on such commerce and that the same dangers that are to be guarded against when a railroad extends its line for its own use, or leases it for the sole use of another, exist where it agrees to a joint use by itself and another road. And upon a consideration of the language of § 1 (18) in the light of facts found and of settled governmental policies in respect of the regulation of interstate transportation, the court concluded that the case is within the statute; that the federal commission had jurisdiction over the trackage agreements and that § 148 of the New York Railroad Law no longer applies.

Section 1 (18) was added by Transportation Act, 1920. It provides: "No carrier . . . shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this Act over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience

and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad . . ." The paragraph also declares that no carrier shall abandon the operation of any portion of a line of railroad until it obtains the Commission's certificate that public convenience and necessity permit it. Paragraph (20) authorizes the Commission to impose such terms and conditions as in its judgment the public convenience and necessity may require, and provides that " without securing approval other than such certificate " the carrier may " proceed with the construction, operation, or abandonment covered thereby."

These provisions do not specifically mention trackage agreements providing for joint use of railroad lines, tracks or other facilities by two or more carriers. The question is whether the general language of paragraph (18) includes the arrangement under consideration. Prior to the Transportation Act, 1920, regulations coincidentally made by federal and state authorities were frequently conflicting, and often the enforcement of state measures interfered with, burdened and destroyed interstate commerce. Multiple control in respect of matters affecting such transportation has been found detrimental to the public interest as well as to the carriers. Dominant federal action was imperatively called for. *Minnesota Rate Cases,* 230 U.S. 352, 433. And it was everywhere known that enormous sums had been expended by interstate railroad carriers for the construction and operation of lines that were not needed or likely to be needed. Such investments had brought financial ruin to some and had made doubtful the power of many to continue operation in other than flush times. Need for effective regulation in this field had become urgent; and undoubtedly the Congress, by the provisions above referred to, intended to

confer upon the Commission plenary power to limit inter-state carriers' expenditures for construction or operation to lines of railroad reasonably necessary for the service of the public.

So far as concerns the purpose to be attained by this legislation, there is no room for a distinction between unjustifiable expenditures for the construction or operation of new mileage, on the one hand, and inadequate rentals or extortionate exactions under trackage agreements, on the other. The reasons for the exertion of federal authority, to the exclusion of state regulation, apply with like force to both. The Act, including paragraph (18) and related provisions, is construed to make federal authority effective to the full extent that it has been exerted and with a view of eliminating the evils that Congress intended to abate. *Wisconsin R. R. Comm'n* v. *C., B. & Q. R. Co.,* 257 U.S. 563, 585, 589–590. *New England Divisions Case,* 261 U.S. 184, 189. *Railroad Comm'n* v. *Southern Pac. Co.,* 264 U.S. 331, 343. *Texas & Pac. Ry.* v. *Gulf, C. & S. F. Ry.,* 270 U.S. 266, 277. *Colorado* v. *United States,* 271 U.S. 153, 163. *Alabama & V. Ry.* v. *Jackson & E. Ry.,* 271 U.S. 244, 249.

The words employed are broad enough to include the Long Island operations under the trackage agreement. The phrase " to operate any line of railroad " seems quite sufficient to include such use. There is nothing to suggest that the " operation " for which the commission's approval is required may not be by other than the owner or lessee of the line or that it is to be limited to exclusive use. For more than a score of years the Long Island has used these lines for the passage of frequent trains carrying an enormous and ever increasing traffic between the terminus of its owned railroad at Sunnyside and the Pennsylvania station. It is no stretch to say that it has been operating such lines or that they constitute an " exten-

sion " of its own railroad. The use is a joint one but it is nevertheless " operation." And the phrase, " engage in transportation . . . by means of such additional or extended line of railroad " reasonably may be deemed to include a line owned by another carrier. The Long Island's use of the Pennsylvania lines covered by the agreement serves the same purpose as would the acquisition of such lines by purchase or the construction by it of a like extension into Manhattan. The provision as to abandonment is also significant, for if the Long Island were to cease to use the lines covered by the agreement, it reasonably might be held to have abandoned a " portion of a line of railroad." Any interpretation excluding the lines of railroad in question would conflict with implications of our decisions. *Alabama & V. Ry.* v. *Jackson & E. Ry., supra,* 250. *Cleveland, C., C. & St. L. Ry.* v. *United States,* 275 U.S. 404, 409. The provisions of paragraph (18) undoubtedly apply to the operations under trackage agreements such as that under consideration.

There is no merit in appellants' contention that, because the joint use commenced prior to the Transportation Act and has since been continuous, the provisions of paragraph (18) do not apply. The extended term of the contract approved by the state commission expired January 1, 1927. The agreement submitted to the Interstate Commerce Commission for approval was made long after such expiration and when there was no agreement for continuing joint operation or use of the lines and other facilities. On the taking effect of the Transportation Act the state commission was stripped of power to prescribe terms for such operation. The authority of the Interstate Commerce Commission is paramount and, in respect of the operation and agreement under consideration, it is necessarily exclusive.

*Affirmed.*