

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

January 23, 1939

Honorable C. F. Petet
Secretary
Railroad Commission
Austin, Texas

Dear Mr. Petet:

Opinion No. 0-76
Re: Jurisdiction of Railroad Commission
in connection with Southern Pacific
Lines' Discontinuing Trains 11 and
12 through El Paso and to the Texas-
New Mexico State Line

This office is in receipt of your letter of January 10, 1939, advising
that in February, 1938, the Southern Pacific Company discontinued the
operation of two trains Nos. 11 and 12, which prior thereto went
through El Paso to the Texas-New Mexico State line. You are advised and
ask us to assume that all of the business handled by those two trains
was interstate business. The Southern Pacific Company did not obtain
the permission of the Railroad Commission of Texas to so discontinue
the use of said trains, and you ask an opinion as to whether the
Railroad Commission has jurisdiction such as to make such permission
necessary.

Congress has undertaken in the passage of the Interstate Commerce Act
to regulate the operation of passenger trains and freight trains engaged
in the handling of interstate business. Showing in part the regulations
thus made, we quote from Section 1, Title 49, U. S. C. A., Chapter 1,
as follows:

"(1) The provisions of this chapter shall apply to common
carriers engaged in-

(a) The transportation of passengers or property wholly by
railroad, or partly by railroad and partly by water when both
are used under a common control, management, or arrangement
for a continuous carriage or shipment; or

(c) The transmission of intelligence by wire or wireless
from one State or Territory of the United States, or the
District of Columbia, to any other State or Territory of the
United States, or the District of Columbia, or from one place
in a Territory to another place in the same Territory, or

from any place in the United States through a foreign country to any other place in the United States, or from or to any place in the United States to or from a foreign country, but only in so far as such transportation or transmission takes place within the United States.

(10)  The term 'car service' in this part shall include the use, control, supply, movement. distribution, exchange, interchange, and return of locomotives, cars and other vehicles used in the transportation of property, including special types of equipment and the supply of trains, by any carrier by railroad subject to this part.

(11) It shall be the duty of every carrier by railroad subject to this part to furnish safe and adequate  car service and to establish, observe, and enforce just and reasonable rules, regulations, and practices with respect to car service; and every unjust and unreasonable rule regulation, and practice with respect to car service is prohibited and declared to be unlawful. . . .

(13)  The Commission is hereby authorized by general or special orders to require all carriers by railroad subject to this part, or any of them, to file with it from time to time their rules and regulations with respect to car service, and the Commission may, in its discretion, direct that such rules and regulations shall be incorporated in their schedules showing rates, fares, and charges for transportation, and be subject to any or all of the provisions of this part relating thereto.

(14)  The Commission may, after hearing, on a complaint or upon its own initiative without complaint, establish reasonable rules, regulations, and practices with respect to car service by carriers by railroad subject to this part, including the compensation to be paid for the use of any locomotive, car, or other vehicle not owned by the carrier using it, and the penalties or other sanctions for nonobservance of such rules, regulations, or practices.

(15) Whenever the Commission is of the opinion that shortage of equipment, congestion of traffic, or other emergency requiring immediate action exists in any section of the country, the Commission shall have, and it is hereby given, authority, . . .

(a)  To suspend the operation of any or all rules, regulations, or practices then established with respect to car service for such time as may be determined by the Commission;  (b)  to make such just and reasonable directions with respect to car service without regard to the ownership as between carriers of locomotives, cars, and other vehicles, during such emergency as in its opinion will best promote the service in the interest of the public and the commerce of the people, upon such terms of compensation as between the carriers as they may agree upon, or, in the event of their disagreement, as the Commission may after subsequent hearing find to be just and reasonable . . .

(17)  The directions of the Commission as to car service and to the matters referred to in paragraphs (15) and (16) may made through and by such agents or agencies as the Commission shall designate and appoint for that purpose. It shall be the duty of all carriers by railroad subject to this part, and of their officers, agents, and employees, to obey strictly and conform promptly to such orders or directions of the Commission, and in case of failure or refusal on the part of any carrier, receiver, or operating trustee to comply with any such order or direction such carrier, receiver, or trustee shall be liable to a penalty of not less than $100 nor more than $500 for each such offense and $50 for each and every day of the continuance of such offense, which shall accure to the United States and may be recovered in a civil action brought by the United States: Provided, however, that nothing in this part shall impair or affect the right of a State, in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this part. . .

(21)  The Commission may, after hearing, in a proceeding upon complaint or upon its own initiative without complaint, authorize or require by order any carrier by railroad subject to this part, party to such preceeding, to provide itself with safe and adequate facilities for performing as a common carrier its car service as that term is used in this part, and to extend its line or lines:"

It is thus noted that for State regulation, there was left only intrastate business, and even that is curtailed by the requirement that no State regulation shall be inconsistent with any lawful order of the Interstate Commerce Commission. Par. 17 above.

In Atlantic Coast Line R. Co. v. State, 143 So. 255, the Supreme Court of Florida held that the State Railroad Commission could not enforce continued operation of an interstate passenger train carrying intrastate passengers. It was further held that if discontinuance of the train would render service to intrastate business insufficient, the State Railroad Commission could require the rendition of sufficient service, not by requiring continued operation of the interstate train, but by requiring the carrier to supply proper facilities between intrastate points.

In Transit Com. Co. v. U. S., 53 S. C. 536, 289 U. S. 121  77 L. Ed. 1075, it was held that on taking effect of this Act, a State Commission was stripped of its power to prescribe terms for joint operation of railroad tracks under a trackage agreement, and thereafter authority of the Interstate Commerce Commission became paramount and exclusive.

In Louisville & N. R. Co.v. Eubank, 184, U. S. 27, The United States Supreme Court held unconstitutional a provision of the Kentucky Constitution which attempted to prohibit common carriers from charging more for a shorter than for a longer haul, so far as its provisions extended to a long haul from a place outside of the one inside of the State, and a shorter haul between points on the same line and in the same direction, both of which are within the State, as the carrier is thus compelled to adjust, regulate or fix his interstate rates with some reference to his rates within the State.

Quotation is from the opinion of the Supreme Court of Illinois, in People vs. Ill. C. R. Co., 324 Ill. 591. 51 A. L. R. 1236, certiorari denied, 48 S. C. 37, as follows:

> "The complete and paramount power of Congress to regulate interstate commerce is well established. By virtue of the comprehensive terms of the constitutional grant of power the authority of Congress is adequate to meet the varying exigencies that arise and to protect the national interest by securing the freedom of interstate commercial intercourse from local control. Houston, E. & W. T. R. Co. v. United States, 234 U. S. 342, 58 L. ed. 1341, 34 Sup. Ct. Rep. 833: Gibbons v. Ogden, 9 Wheat, 1, 6 L ed. 23; Brown v. Maryland, 12 Wheat. 419, 6 L. ed. 678; Minnesota Rate Cases ( Simpson v. Shepard) 230 U. S. 352, 57 L. ed. 1511, 48 L. R. A. (N. S.) 1151, 33 Sup. Ct. Rep. 729, Ann. Cas. 1916A, 18."

Holding that Congress has the power to control the intrastate rates maintained by a carrier under State authority to the extent necessary to remove the resulting discrimination against interstate commerce arising out of the relation between such intrastate rates and interstate rates which are reasonable in themselves, the Supreme Court in H. E. & W. T. R. Co. v. U. S., 234 U. S. 342, said in part:

"The fact that carriers are instruments of intrastate commerce, as well as of interstate commerce, does not derogate from the complete and paramount authority of Congress over the latter, or preclude the Federal power from being exerted to prevent the intrastate operations of such carriers from being made a means of injury to that which has been confided to Federal care. Wherever the interstate and intrastate transactions of carriers are so related that the government of the one involves the control of the other, it is Congress, and not the state, that is entitled to prescribe (352) the final and dominant rule, for otherwise Congress would be denied the exercise of its constitutional authority, and the state, and not the nation, would be supreme within the national field."

Under the facts which you submit to us, the trains carried interstate business only. In our opinion the Railroad Commission of Texas was without jurisdiction to take any action in the premises. This. is likewise true, even though the two trains in question carried a mixture of intrastate and interstate business.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

s/ Glenn R. Lewis


By
    Glenn R. Lewis
    Assistant

GRL:N/ldw

APPROVED
s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS