**ST. LOUIS, B. & M. RY. CO. et al. v. TEXAS MEXICAN RY. CO.**

No. 11387.

Court of Civil Appeals of Texas. San Antonio.

May 31, 1944.

Rehearing Denied June 21, 1944.

E. H. Crenshaw, Jr., of Kingsville, and Andrews, Kelley, Kurth & Campbell, of Houston, for appellant.

E. H. Borchers, of Laredo, B. D. Tarlton and M. G. Eckhardt, both of Corpus Christi, and J. D. Dodson, of San Antonio, for appellees.

NORVELL, Justice.

The St. Louis, Brownsville and Mexico Railway Company (hereinafter referred to as Brownsville Railway) and its Trustee, Guy A. Thompson, have appealed from a judgment for the sum of $184,929.85 rendered against the Trustee and in favor of the Texas Mexican Railway Company (hereinafter referred to as Tex-Mex Railway). The amount of the judgment is based upon a jury finding that the reasonable value per day of the use by Thompson, Trustee, of the railroad tracks and facilities belonging to the Tex-Mex Railway, situated in Corpus Christi, Texas, and between said City and Robstown, Texas, was $278.09 per day from November 1, 1941, to August 27, 1943, inclusive, a total of 665 days.

According to our view of the case, there are two questions of substance involved. One relates to the jurisdiction and power of the trial court to render the judgment involved, and the other relates to the sufficiency of the evidence to support the jury's finding.

In 1904 Tex-Mex Railway owned and operated a railway line between Laredo and Corpus Christi. The Brownsville Railway owned and operated a railway line between Houston and Brownsville. The tracks of the Brownsville Railway and Tex-Mex Railway intersected at Robstown, approximately sixteen and a half miles west of Corpus Christi. The Brownsville Railway, being desirous of running certain of their trains into Corpus Christi, negotiated a contract with the Tex-Mex Railway under the terms of which it secured the right to operate trains over the Tex-Mex tracks between Robstown and Corpus Christi and make use of the Tex-Mex terminal facilities at Corpus Christi. This contract was dated November 1, 1904, and provided for a term of fifty years unless sooner terminated by the parties. Compensation or rental to the Tex-Mex was fixed by the contract through the adoption of a formula based upon two and one-half per cent of the estimated valuation of the privileges granted to the Brownsville Railway, and the proportional cost of maintenance and operation according to a "car basis," that is, the Brownsville Railway agreed to pay its proportionate part of maintenance and operation costs according to the ratio its car operations over the Tex-Mex tracks bore to the total aggregate of cars so operated over said tracks. Brownsville Railway further obligated itself to pay annually an amount equal to one-half the amount of taxes levied and assessed against the Tex-Mex properties jointly used by the Brownsville Railway.

This contract contained the following provision: "It is further agreed that this contract may be terminated without giving any reason therefor, by either party, upon giving twelve months' notice of such intent to terminate the lease."

On the first day of October, 1914, the contract was modified by the parties in certain particulars. Maintenance cost was placed on a "car mileage basis" rather than a "car basis," but the provision of the original agreement above quoted remained unchanged. The evidence indicates that the amount of daily rental arrived at by means of the original contract formula, as modified in 1914, would be substantially less than the amount set forth in the jury verdict.

On October 31, 1940, the Tex-Mex Railway gave written notice of its intention to terminate the contract twelve months from date of notice. Despite this action, the Trustee of the Brownsville Railway, after November 1, 1941, continued to operate over the Tex-Mex tracks and facilities, and was informed by the Tex-Mex Railway that a charge of $500 per day for the use of these facilities would be made. The Trustee and the Brownsville Railway refused to pay this rental or any other charge, save that provided for in the contract of November 1, 1904, as supplemented by the agreement of October 1, 1914.

This suit followed. The Tex-Mex Railway prayed for a permanent injunction restraining the Brownsville Railway from making use of its tracks and facilities, but such relief was denied by the trial court, and no complaint of this ruling is made here.

The judgment contains certain findings made by the trial court, viz.: (1) The contract of November 1, 1904, as supplemented by agreement of October 1, 1914, had been adopted by the Trustee for the Brownsville Railway; (2) the Trustee had operated under the contract from the time of his appointment (1933) until October 31, 1941; (3) due notice of termination of said contract had been given by the Tex-Mex Railway, so that the contract terminated as of October 31, 1941, but (4) the Trustee had since that date made use of the Tex-Mex properties over protest of the Tex-Mex Railway, claiming a right to do so under the contract of November 1, 1904. Based upon these findings and the verdict of the jury, judgment was rendered as above indicated. However, no execution of the judgment (other than for costs) was directed, but the judgment was ordered certified to the United States District Court for the Eastern District of Missouri (Eastern Division), the court having jurisdiction over the bankruptcy proceedings affecting the Brownsville Railway.

The relief prayed for by the Tex-Mex Railway and granted by the court below was an award of compensation for the use of its property (for a specified period of time) by another having no contract rights authorizing such use.

It is clear that unless the jurisdiction of the State District Court over the subject matter has been in some way curtailed or restricted by constitutional federal action, the court below was authorized and fully empowered to settle and determine this controversy by rendering a judgment with reference thereto.

Appellants suggest that the trial court was deprived of jurisdiction over the subject matter by federal action under the bankruptcy power and under the power to regulate interstate commerce.

On June 22, 1933, L. W. Baldwin and Guy A. Thompson were appointed trustees for the Brownsville Railway in accordance with section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. Baldwin resigned effective December 26, 1935, and since that time Guy A. Thompson has served as sole trustee for the Brownsville Railway.

It appears from the record that a number of orders relating to the prosecution of claims against the debtor in the process of reorganization have been entered by the bankruptcy court, i. e., the United States District Court for the Eastern District of Missouri. The order last entered and now in effect provides in part:

"That the commencement or continuation of suits against any of the debtor companies is hereby stayed and enjoined until after final decree entered in these proceedings; provided, however, that suits or claims for damages caused by the operations of trains, buses or other means of transportation may be filed and prosecuted to judgment in any court of competent jurisdiction, and any order heretofore staying the prosecution of any such causes of action or appeal is hereby vacated."

■ Appellants cite a number of cases which discuss the powers of the bankruptcy court, as well as the authority of trustees appointed under Section 77 of the Bankruptcy Act. None of these cases, however, is authority for denying to the state court its asserted jurisdiction over the controversy presented here. The case of Anderson v. Scandrett, D. C., 19 F.Supp. 681, is somewhat similar on the facts, and in our opinion supports a holding in favor of the trial court's jurisdiction. We hold that the fact that the Brownsville Railway is in the process of reorganization in bankruptcy (Section 77) does not deprive the state district court of jurisdiction of the subject matter of this controversy.

We next consider the effect of the federal exercise of authority under the interstate commerce power. It is conceded that both corporations here involved are engaged in interstate commerce. Appellants particularly rely upon Section 1 (18) of the Interstate Commerce Act. 49 U.S.C.A. § 1, par. (18), Transportation Act of February 28, 1920, c. 91, § 402, 41 Stat. 477.

This paragraph reads as follows:

"Extension or abandonment of lines; certificate required. * * * No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this chapter over or by means of such addi-

tional or extended line of railroad, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, and no carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment."

Appellants cite the case of Transit Commission v. United States, 289 U.S. 121, 53 S.Ct. 536, 77 L.Ed. 1075, as authority for the proposition that the joint trackage agreement of 1904 could not be terminated in accordance with the terms of the contract itself, unless and until a certificate of public convenience and necessity had been procured from the Interstate Commerce Commission.

In the case cited it was held that an agreement entered into by and between the Long Island Railroad Company and the Pennsylvania Railroad Company giving to the Long Island the right to make use of the facilities of the Pennsylvania Tunnel and Terminal Railroad Company (a subsidiary of the Pennsylvania Company, and its lessor) under terms and conditions agreed upon by the parties and approved by the Interstate Commerce Commission was valid and enforcible even though not approved by the Transit Commission of the State of New York.

The present case is distinguishable upon the facts. It appears that the Tex-Mex Railway made application to the Interstate Commerce Commission for permission to terminate the contract of November, 1904, in accordance with the provisions thereof. This application was returned by the Secretary of the Commission, together with his statement that:

"The Commission is without authority to consider an application of the nature submitted by you. Its jurisdiction under Sec. 1 (18) of the Interstate Commerce Act would extend only to abandonment of operation by the St. Louis, Brownsville & Mexico Railway Co.

"I note that on Nov. 1, 1940, notice in accordance with the terms of the trackage agreements was written to the Brownsville Company of the intent of the Texas Mexi-

can to cancel the contract. No application has been filed by the Brownsville Company. Accordingly the application and copies are returned herewith."

██ Since receipt of this communication, neither the Tex-Mex Railway, nor the Brownsville Railway (or its Trustee) have in any way sought to invoke the jurisdiction of the Interstate Commerce Commission with reference to this controversy. The trial court evidently refused to issue the injunction prayed for by the Tex-Mex Railway upon the theory that Section 1 (18) of the Interstate Commerce Act required that the Brownsville Railway continue to operate over the Tex-Mex tracks until such time as a certificate of public convenience and necessity permitting abandonment of such operations should be secured. As above indicated, that ruling is not questioned here. If it be conceded that said Section 1 (18) effectively prevented the issuance of an injunction against the Brownsville Railway and its Trustee, it does not necessarily follow that such legislation kept in force and effect the provisions of the contract of 1904 relating to rentals and other charges. Our conclusion is that, as no affirmative action had been taken by the Interstate Commerce Commission which would in any way conflict with the action taken by the court below, said court had jurisdiction of this controversy and was empowered to render judgment. We also hold that the 1904 contract was legally terminated and cancelled as of October 31, 1941.

██ Since the Trustee of the Brownsville Railway has been making use of the tracks and facilities owned by the Tex-Mex Railway since that date, without a contract, it follows that he as Trustee is liable to pay the Tex-Mex Railway the reasonable value of such use. We next consider appellants' attack upon the legal sufficiency of the evidence to support the jury's finding as to the value of such use.

The issue submitted to the jury reads as follows:

"How much do you find, from a preponderance of the evidence, to be the reasonable value per day of the use by the defendant, Guy A. Thompson, Trustee, of the St. Louis, Brownsville and Mexico Railway Company to .(of) the railroad tracks and facilities belonging to plaintiff situated in Corpus Christi, Texas, and from Robstown, Texas, to Corpus Christi, Texas?

Answer in Dollars and Cents per day, if any."

The appellants made five objections to the submission of this issue, which were overruled by the trial court. Three are predicated upon the proposition that the 1904 contract is still in existence. Another asserts that no final judgment can be rendered on the verdict because it is not shown when the Trustee will cease to use the premises and properties involved. None of these is well taken. The remaining objection, and the only one raising a question as to the evidence, reads as follows:

"Defendant (Trustee) objects to the submission of Special Issue No. 1 as a whole for the reason that there is no evidence to support any amount as the value per day of the use by defendant of the premises involved, the only evidence being as to the value of the total and exclusive use of the premises, and the evidence showing that all of the premises are and have been subjected to use by one other carrier, and a part of the premises by two other carriers, and no evidence was adduced showing the proportionate part of the total use which this defendant made of said premises."

The objection above stated was urged by appellants in substantially the same form in a motion for judgment non obstante veredicto and in motion for new trial, and carried forward into their brief by means of a point.

The contention raised is one of law, that is, that there is no evidence sustaining the jury's finding that the reasonable value of the use was $278.09 per day.

The record of the testimony relating to the question contained in the issue submitted to the jury is detailed and voluminous. We can here give but a brief summary of the same.

Joe Roscoe, president of the real estate board of Corpus Christi and a member of the board's appraisal committee, testified that he, together with two other members of the appraisal committee, made an investigation of the value of the lands occupied by the Tex-Mex tracks and installations used by the Brownsville Railway. Roscoe gave his estimate of value as to the various tracts and parcels of lands involved exclusive of the value of the installations thereon and gave $475,584.88 as his estimate of the total value of said lands. The criterion taken by Roscoe was the fair market value of the land involved, that is,

the amount of money a seller would take and a purchaser would give, assuming both parties were willing and able to complete a transaction, but neither of them was under compulsion to do so.

The witness, Terrell Bartlett, a practicing civil and mechanical engineer experienced in railway valuations, testified that in his opinion the cost of reproduction of the Tex-Mex tracks and installations here involved would amount to $910,-392. Costs were estimated on a five-year average, ending December 31, 1942. Aggregate depreciation was estimated at $150,168, leaving a net value of the Tex-Mex tracks and installations at $820,224 on a cost of reproduction less depreciation basis. Bartlett accepted Roscoe's figure of $475,584.88 as the value of the lands involved, and thus arrived at a total of $1,-295,808.88 as the value of the Tex-Mex properties and installations used by the Brownsville Railway.

Bartlett considered six to eight per cent of the value arrived at in the manner set forth as being a fair return upon the property. He testified that taking the values established as herein calculated, the actual maintenance costs as shown by the books of the Tex-Mex Railway, the amounts actually paid in taxes, he would consider an amount of $147,438 to $173,395 per annum as a fair rental value of the property.

H. T. Bradley, the valuation engineer of the Brownsville Railway, placed the fair value of the tracks and facilities of the Tex-Mex Railway being used by the Trustee of the Brownsville Railway at $514,134. This estimate seems to be founded upon an original cost basis as opposed to the cost of reproduction less depreciation basis employed by Bartlett.

■ Appellants' points do not assert that the verdict of the jury is excessive. No request was made for an explanatory instruction which would restrict the jury to a particular method or formula for determining either the values of the property involved or the reasonable value of the use thereof. The interrogatory submitted did however contain a controlling fact issue. Rule 279, Texas R.C.P. The question therefore presented is whether or not the evidence and such permissible inferences as can be drawn therefrom reasonably support the conclusion that the sum of $278.09 per day is the reasonable value of the use of the properties made by the Trustee of the Brownsville Railway.

Our conclusion is that the evidence supports the verdict. Appellants' chief complaint seems to be that there is no evidence of a per diem value of the use, and that there is not a sufficient development of the proportionate use made of the facilities by the Brownsville Railway, the Tex-Mex Railway and the Texas and New Orleans Railway Company.

As to the first complaint, appellants rely upon cases such as Hudson v. Wilkinson, 45 Tex. 444, and Brown v. Spector, Tex. Civ.App., 70 S.W.2d 478, in which it is held that the rental value of certain properties wrongfully detained from the owner for a considerable period of time can not be determined upon a per day rental basis. This rule applies when it is shown that the per day rental for any particular property over a period of time is greater than the amount that would be charged if rentals were calculated upon a time unit of more than a day. Appellants point out that the amount charged for a hotel room for a month is generally less if calculated upon a weekly basis, rather than upon a daily basis. As we view the case here, however, the evidence permits an estimate of the reasonable value of the use upon an annual basis, and the day may be taken as a convenient fraction of the year. There is no indication in the evidence that properties such as are here involved have a rental value per day which if charged over the period of a year would exceed the amount charged upon an annual basis.

As to the proportional use of the properties made by the railways mentioned, appellants' complaint is that the use of the facilities by the owner, the Tex-Mex Railway, was not developed in detail. The exact proportionate use on a "car basis", a "car mileage basis", a total tonnage basis, or some other basis, is not definitely shown. It is not, however, accurate to say that the record contains no basis for an estimate of the use of the tracks and facilities by the Tex-Mex Railway. It appears that there was a joint use. The Tex-Mex Railway possessed the right to make use of its own facilities and exercised this right as its necessities demanded. The Texas and New Orleans Railway Company apparently made some limited use of the Tex-Mex Corpus Christi yards. Considering the situation of the Brownsville Railway, it would seem unconscionable to charge said railway with a sum equal to the value of a total exclusive use of the properties. It does not appear that this was done by the trial court in accepting and giving effect to the jury's finding. The controlling issue as submitted was somewhat general and allowed to the jury a wide degree of latitude in arriving at its estimate of the reasonable value of the use. However, the issue seems to have been satisfactory in form, as neither party made objections thereto with reference to the form of the question. Upon the point raised by appellants—the sufficiency of the evidence as a matter of law to support the jury's finding—we must conclude, in accordance with the rules applicable to such situations, that the verdict has support in the evidence. Sturtevant v. Pagel, 134 Tex. 46, 130 S.W.2d 1017; 3 Tex.Jur. 1093, § 767.

What has been said disposes of the principal contentions presented by appellants on this appeal. As hereinabove indicated, the trial court decreed that the contract of November, 1904, as supplemented in 1914, has been lawfully terminated and was consequently of no further force and effect. The record will not support the theory that after the termination of this agreement, the Tex-Mex Railway ratified the contract or recognized its existence. Judgment decreeing the contract's termination was adverse to both the Brownsville Railway, the debtor in bankruptcy proceedings, and its Trustee. These parties made a joint defense to appellee's contention that there was no contract in existence. An award of costs jointly and severally against the Brownsville Railway and the Trustee was not erroneous and seems permissible under the orders entered by the bankruptcy court and introduced in evidence.

Being of the opinion that appellants' points fail to disclose reversible error, an affirmance of the judgment of the court below will accordingly be ordered.

Affirmed.