The issue on this appeal is: Does a state court have subject matter jurisdiction of an abandonment of a railroad right-of-way, or is the question of abandonment pre-empted by the Interstate Commerce Act under 49 U.S.C. § 10501 et seq.
Appellant Mobile and Gulf Railroad is owned by Brown Wood Preserving Company, which purchased the railroad from J. Graham Brown Foundation, Louisville, Kentucky, in 1980. The railroad owns twelve (12) miles of track, all of which is located in Tuscaloosa County, Alabama. The railroad traverses the Crockers' (appellees') property near Buhl. In 1926, the railroad acquired an easement across the property of the Crockers through a condemnation proceeding in Tuscaloosa County Probate Court. On February 28, 1971, the railroad granted and conveyed by warranty deed to Boyce Crocker and his heirs and assigns the "full and exclusive right to cultivate, rent, pasture, occupy, and otherwise *Page 831 
use in any manner not inconsistent with the rights required by the appellant in the right-of-way."
In 1979, appellant ceased all operation of trains across the right-of-way in dispute. At that time, the Tuscaloosa County Engineering Department paved over the section of appellants' track which crossed the old Columbus Highway near the Crockers' property. Furthermore, on March 10, 1980, an agent and employee of the railroad, Ray Bobo, told the Crockers that the easement was "not going to be used as a railroad anymore."
In reliance on this statement by the vice-president of the railroad, the Crockers claim, they expended approximately $1,000 to keep the right-of-way clear on this strip of land so that their cattle could graze on the property. The Crockers also erected fences and planted a garden on the right-of-way. No objections were made at that time by the railroad to either the planting of the garden or the construction of the fences.
The Crockers filed a petition for declaratory relief with the Tuscaloosa County Circuit Court requesting that the court declare that the railroad's right-of-way had been abandoned. The railroad filed its answer and counterclaim and requested a preliminary injunction ordering the removal of the fences placed across the railroad tracks. The railroad also asked the court to hold that the right-of-way had not been abandoned. The railroad later added claims for trespass and interference with a business contract to its counterclaim. The railroad also filed a motion to dismiss the Crockers' complaint on the ground that the court lacked subject matter jurisdiction. The trial court denied the motion and the railroad filed a request with this Court, asking permission to appeal, pursuant to Rule 5, Ala.R.App.P. This Court granted the railroad permission to appeal from the interlocutory order entered by the trial court.
We first address a procedural question concerning our scope of review. The Crockers contend that our review should be limited to only that evidence which was submitted to the trial judge at the time the railroad filed its motion to dismiss. The railroad contends that if there is an absence of subject matter jurisdiction, the lower court had no power to act, and that "jurisdiction over the subject matter cannot be created by waiver or consent."
The procedural context in which this dispute arises is as follows: The initial complaint was filed on October 6, 1982, and the railroad filed an answer and counterclaim on October 15, 1982. On February 4, 1983, the railroad filed a motion for summary judgment and attached to the motion several affidavits to the effect that the railroad was a duly licensed common carrier under and pursuant to the regulations of the Interstate Commerce Commission, and that no proceedings had been initiated to abandon the railroad pursuant to federal law. The trial court denied the motion for summary judgment on March 14, 1983. The railroad filed an amendment to its counterclaim on August 3, 1983, and on September 6, 1983, filed its motion to dismiss, which was denied on October 27, 1983. The railroad did not, within the time specified in Rule 5, Ala.R.App.P., request permission to appeal from the lower court's order denying its motion for summary judgment. As already stated, this Court granted the railroad's request for permission to appeal the trial court's denial of its motion to dismiss. The entire record before the trial court was designated and transmitted to us for consideration on this appeal.
The Crockers claim that on this review we should not consider any of the documents which were filed in connection with the railroad's motion for summary judgment. We cannot agree with them. The question of jurisdiction is always fundamental. As this Court held in Norton v. Liddell, 280 Ala. 353,194 So.2d 514 (1967):
 "The question of jurisdiction is always fundamental, and if there is an absence of jurisdiction over either the person, or the subject matter, a court has no power to act, and jurisdiction over the subject matter cannot be created by waiver or consent. Rinehart, etc. v. Reliance Life *Page 832 Ins. Co. of Georgia, 272 Ala. 93, 128 So.2d 503. Absence of jurisdiction over the subject matter ends all inquiry, and the matter may be raised on appeal."
The railroad, of course, could have made its defense of lack of subject matter jurisdiction before it filed its answer and counterclaim. The precise question is whether the trial court and this Court can consider the documents filed in connection with the railroad's motion for summary judgment in determining the jurisdictional question. We hold that both the trial court and this Court can consider matters not submitted contemporaneously with the motion to dismiss, but which are included in the record. Rule 12 (h)(3), Ala.R.Civ.P., provides that "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."
Facially, the Crockers' complaint appears sufficient to show that the trial court had jurisdiction, but we are not limited on this appeal to the allegations of the complaint. Matters outside the pleadings show that there was a legal question whether the trial court had subject matter jurisdiction. Consequently, we will review that question based upon what is before us in the record.
We now consider the question whether the trial court had the power to determine the abandonment issue.
There is an uncontradicted affidavit in the record which indicates that the railroad was a duly licensed carrier under and pursuant to the regulations of the Interstate Commerce Commission, but it is also undisputed that the tracks were not being used as an active railway, but were being used by the railroad to store railway cars. The Interstate Commerce Commission had not authorized the abandonment of the railroad right-of-way.
In view of these facts, we are of the opinion that the abandonment of a railroad right-of-way is within the exclusive authority of the Interstate Commerce Commission, pursuant to the provisions of the Interstate Commerce Act.
This act is among the most pervasive and comprehensive of federal regulatory schemes and under this act the Interstate Commerce Commission is given exclusive and plenary authority in regard to railroad abandonments. Chicago N.W. Transp. Co. v.Kalo Brick Tile Co., 450 U.S. 311, 101 S.Ct. 1124,67 L.Ed.2d 258 (1981).
In Kalo Brick, the Court held:
 "The Commission's power to regulate abandonments by rail carriers stems from the Transportation Act of 1920, ch. 91, 41 Stat. 477-478, which added to the Interstate Commerce Act a new § 1 (18), recodified at 49 U.S.C. § 10903 (a) (1976 ed., Supp.III). That section stated in pertinent part:
 "`[N]o carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment.'
 This section, we have said, must be `construed to make federal authority effective to the full extent that it has been exerted and with a view of eliminating the evils that Congress intended to abate.' Transit Comm'n v. United States, supra, [289 U.S. 121] at 128, 53 S.Ct. [536] at 538 [77 L.Ed. 1075]. Among those evils is `[m]ultiple control in respect of matters affecting [interstate railroad] transportation,' because such control, in the judgment of Congress, has proved `detrimental to the public interest.' 289 U.S. at 127, 53 S.Ct. at 538. See Chicago v. Atchison, T. S.F.R. Co., supra, [357 U.S. 77] at 87, 78 S.Ct. [1063] at 1069 [2 L.Ed.2d 1174]. Consequently, we have in the past concluded that the authority of the Commission to regulate abandonments is exclusive. Alabama Public Service Comm'n v. Southern R. Co., 341 U.S. 341, 346, n. 7, 71 S.Ct. 762, 766, n. 7, 95 L.Ed. 1002 *Page 833 
(1951). See Colorado v. United States, 271 U.S. 153, 164-166, 46 S.Ct. 452, 455, 70 L.Ed. 878 (1926). The Commission's authority over abandonments is also plenary. So broad is this power that it extends even to approval of abandonment of purely local lines operated by regulated carriers when, in the Commission's judgment, `the over-riding interests of interstate commerce requir[e] it.' Palmer v. Massachusetts, 308 U.S. 79, 85, 60 S.Ct. 34, 37, 84 L.Ed. 93 (1939). The broad scope of the Commission's authority under § 1 (18) has been clear since the Court first interpreted that provision in Colorado v. United States, supra. There, the Court rejected a challenge by the State of Colorado to the power of the Commission to grant a certificate permitting an abandonment of a wholly intrastate branch line operated by an interstate carrier. Justice Brandeis wrote for the Court:
 "`Congress has power to assume not only some control, but paramount control insofar as interstate commerce is involved. It may determine to what extent and in what manner intrastate service must be subordinated in order that interstate service may be adequately rendered. The power to make the determination inheres in the United States as an incident of its power over interstate commerce. The making of this determination involves an exercise of judgment upon the facts of the particular case. The authority to find the facts and to exercise thereon the judgment whether abandonment is consistent with public convenience and necessity, Congress conferred upon the Commission.' 271 U.S. at 165-166, 46 S.Ct. at 454-55.
 "The exclusive and plenary nature of the Commission's authority to rule on carriers' decisions to abandon lines is critical to the congressional scheme, which contemplates comprehensive administrative regulation of interstate commerce."
450 U.S. pp. 319-321, 101 S.Ct. pp. 1131-1132.
Similarly, in Hayfield Northern R.R. v. Chicago N.W.Transp. Co., 693 F.2d 819 (8th Cir. 1982), the Court held that a state law which authorized the plaintiff to condemn a defendant's abandoned railway line for continuing rail purposes stood as an obstacle to the objectives of Congress and thus that the state law was pre-empted by the federal railroad abandonment statute. Revised Interstate Commerce Act,49 U.S.C.A. § 10905.
In Palmer v. Massachusetts, 308 U.S. 79, 60 S.Ct. 34,84 L.Ed. 93 (1939), the United States Supreme Court held that the Interstate Commerce Commission's power is so broad that it extends even to approval of abandonment of purely local lines operated by regulated carriers when, in the commission's judgment, "the overriding interests of interstate commerce requir[e] it."
The nature of the Commission's authority to rule on carriers' decisions to abandon lines is critical to the congressional scheme, which contemplates comprehensive administrative regulation of interstate commerce. Chicago N.W. Transp. Co.v. Kalo Brick Tile Co., 450 U.S. 311, 101 S.Ct. 1124,67 L.Ed.2d 258 (1981). An example of this extensive regulation is § 10905 (a). This section requires the filing of an application for certificate of abandonment or discontinuance under § 10903 and requires that a notice of intent to abandon or discontinue be filed with the ICC. Such filing triggers an extensive administrative procedure which is followed before the ICC enters a decision on the issue of abandonment. If ultimately dissatisfied with the Commission's action, a party may then seek review of its action in the appropriate court. The structure of the act thus makes it clear that Congress intended that an aggrieved party should seek relief in the first instance from the Commission. Kalo Brick, 450 U.S. at 323,101 S.Ct. at 1133.
In a case similar to this one, Kansas City Area Transp., etc.v. Ashley, 555 S.W.2d 9, (Mo. 1977), cert. denied,434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978), the Kansas City Area Transportation Authority *Page 834 
sought to condemn a right-of-way and operating equipment of an embargoed freight railroad owned by the Ashleys. The Supreme Court of Missouri held that the legal abandonment of the appellant railroad's line of track or discontinuance of service could only be accomplished by order of the Interstate Commerce Commission, that the ICC was the agency which, at that time, had jurisdiction of the matters involved in that case.
We hold that the Interstate Commerce Commission has exclusive jurisdiction to determine whether there was an abandonment of the railroad right-of-way.
The "doctrine of exhaustion of administrative remedies" also supports our position. This doctrine "requires that where a controversy is to be initially determined by an administrative body, the courts will decline relief until those remedies have been explored and, in most instances, exhausted." FraternalOrder of Police, Strawberry Lodge #40 v. Entrekin, 294 Ala. 201,209, 314 So.2d 663, 670 (1975). In United StatesNavigation Co. v. Cunard S.S. Co., 284 U.S. 474, 481,52 S.Ct. 247, 249, 76 L.Ed. 408, 410 (1932), the United States Supreme Court, while comparing the Shipping Act of 1916 to the Interstate Commerce Act, stated:
 "The rule had become settled that questions essentially of fact and those involving the exercise of administrative discretion, which were within the jurisdiction of the Interstate Commerce Commission, were primarily within its exclusive jurisdiction, and with certain exceptions not applicable here, that a remedy must be sought from the Commission before the jurisdiction of the courts would be invoked."
For the reasons stated, we reverse the trial court's denial of the railroad's motion to dismiss.
REVERSED AND REMANDED.
JONES, ALMON, EMBRY and BEATTY, JJ., concur.