KANSAS CITY SOUTHERN RY. CO. v. DANIEL, Attorney General of Texas, et al.

LOUISIANA & ARKANSAS RY. CO. v. DANIEL, Attorney General of Texas, et al.

No. 12819.

United States Court of Appeals Fifth Circuit.

March 24, 1950.

Rehearing Denied April 21, 1950.

A. L. Burford, Texarkana, Tex., Major T. Bell, Beaumont, Tex., for appellant.

C. K. Richards, Assistant Attorney General of Texas, Price Daniel, Attorney General of Texas, for appellee.

Before McCORD and WALLER, Circuit Judges, and DOOLEY, District Judge.

WALLER, Circuit Judge.

On February 12, 1948, the Attorney General of Texas filed similar suits in the State Court of Travis County, Texas, against the Kansas City Southern Railway Company, a corporation of Missouri, and the Louisiana & Arkansas Railway Company, a corporation of Delaware, wherein he sought to collect penalties in a total sum of approximately thirty million dollars for violations of Articles 6260, 1536, and 6476, Revised Civil Statutes of Texas 1925, requiring all railroads in Texas to be owned, operated, and maintained by Texas corporations and prescribing penalties for their violation. See also Section 6 of Article X of the Texas Constitution, Vernon's Ann.St.[1]

One of these suits alleged that the Kansas City Southern Railway acquired, and since January 1, 1944, has continuously owned, operated, and maintained, a railway, doing intrastate business within the State of Texas without having acquired a charter from the State as required by Article 6260, supra, and, therefore, is subject to the accumulated penalties provided by the statutes for such violations for which the State had a lien that it was entitled to foreclose.

The suit filed against the Louisiana & Arkansas Railway Company alleged that it had acquired, and had continuously owned, maintained, and operated a railway within the State of Texas since August 25, 1939, in intrastate commerce without having obtained a charter from the State as required by Section 6260, supra, wherefore it had thereby become subject to the penalties of the Texas statutes for which the State had a lien that should be declared and foreclosed.

The cases were removed to the United States District Court for the Western District of Texas upon the filing of a petition by Defendants alleging that the amount in controversy exceeded $3,000.00 and that the action was one arising under the Constitution and laws of the United States in that the Defendants were engaged in interstate commerce over their railroads in the State of Texas pursuant to the approval and authorization of the Interstate Commerce Commission as provided in the Interstate Commerce Act, Title 49 U.S.C.A. § 5(2) (a), by virtue of which they had the lawful right also to do intrastate business in Texas; that the suit by the State Attorney General was an effort to set aside, annul, and suspend in whole or in part a

---

1. Section 6 of Article X of the Texas Constitution provides: "No railroad company organized under the laws of this State, shall consolidate by private or judicial sale or otherwise with any railroad company organized under the laws of any other State or of the United States."

Section 6260 of the Revised Civil Statutes of Texas, 1925, provides: "No corporation, except one chartered under the laws of Texas, shall be authorized or permitted to construct, build, operate, acquire, own or maintain any railways within State."

Articles 1536, 6476, and 6477, Revised Civil Statutes 1925, provide penalties for violation.

Article 6423, Revised Civil Statutes 1925, provides: "No railway company availing itself of any of the privileges herein provided [forming a new corporation] shall claim to be under the jurisdiction of the Federal courts by reason thereof; and any railway company which may avail itself of the said privileges which shall claim to be subject to the jurisdiction of the Federal courts in pursuance of this article shall ipso facto forfeit its reorganization and be remanded to the same condition as it was prior to said reorganization."

valid order of the Interstate Commerce Commission; that the defendants were legally owning, operating, and maintaining railways in Texas under and pursuant to valid orders of the Interstate Commerce Commission entered pursuant to Federal law; and that the suits present claims and disclose controversies of such nature that they could only correctly be determined by a declaration under, and in the light of, the aforesaid Act of Congress and the opinion and orders of the Interstate Commerce Commission made pursuant thereto.

Upon removal the Attorney General filed motions to remand the cases to the State Court, asserting that the records did not present causes removable under the statutes and laws of the United States in that they were not suits of a civil nature, but were suits by the sovereign State of Texas for penalties based upon a State statute designed to enforce the police powers of the State; that the suits did not arise under the Constitution and laws of the United States, and that no Federal question was presented by the record; that it was apparent upon the face of the record that the Plaintiff was not seeking to annul or suspend an order of the Interstate Commerce Commission and was not challenging the Defendants' right to transact interstate commerce within the State of Texas. The petitions of the Plaintiff in the State Court contained no reference to any orders of, or statutes relating to, the Interstate Commerce Commission, and revealed the existence of no Federal question. The Court's orders remanding the cases failed to state the grounds upon which the motions were granted, but it will be assumed that it was because of the failure of the Plaintiff's petitions to exhibit the existence of a Federal question.

The position of the Attorney General on the merits was, and is, that notwithstanding the fact that the Interstate Commerce Commission had allowed the Railroads to acquire and operate railroads in Texas in disregard of the Texas statutes, nevertheless those statutes are still in effect insofar as intrastate traffic is concerned and the transaction of such intrastate business without compliance with the statute of Texas has rendered the Railroads liable to the penalties sought.

On the 18th of February, or nine days after the unappealable orders remanding the State suits were filed, the Railroads filed the complaints in the present cases alleging: (a) that the cases arise under the Constitution and laws of the United States, viz., the commerce, due process, and equal protection clauses of the Federal Constitution, art. 1, § 8 cl. 3; Amend 14, as well as under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.; (b) that suits were pending in the State Court for the foreclosure of statutory liens totalling many millions of dollars and for injunctions to restrain those Railroads from operating in intrastate commerce in Texas; (c) that their operations in Texas were pursuant to authority and permission of the Interstate Commerce Commission; (d) that the statutes of Texas aforementioned have been superseded and rendered ineffective by orders of the Interstate Commerce Commission made pursuant to the Interstate Commerce Act; (e) that the Railroads have complied in full with the Federal law in and about the operation of these railroads in Texas; (f) that the suits in question represent an attempt on the part of the State to regulate, and to impose an undue and unreasonable burden upon, interstate commerce in violation of the commerce clause of the Federal Constitution; and that the Texas statutes relied on by the Attorney General are arbitrary and unreasonable and unconstitutionally deprive the Plaintiffs of their property without due process, and equal protection, of the law.

The Railroads prayed for interlocutory and final injunctions restraining the Attorney General and his aids from prosecuting, or directing the prosecution of, the suits in the State Courts or other suits of like tenor and effect or from attempting to enforce against them Articles 1536, 6260, and 6476, Revised Civil Statutes 1925, of Texas, and for an adjudication that there has been no violation of these articles, but on the contrary that they have been superseded by the orders of the Interstate Com-

merce Commission and are no longer in effect; and that the Defendants, and any and all other persons claiming to act under the supervision of the Attorney General, be perpetually enjoined from enforcing the aforementioned statutes or from advising, instituting, prosecuting, or aiding in any criminal prosecution, or in any suit of any character to recover or impose upon, or enforce against, the Plaintiffs any fine or penalty for refusal to observe the aforementioned statutes of Texas.

The Attorney General and his co-defendants, appearing specially, moved to dismiss the suits on the ground, among other things, that they were suits against the State of Texas, which had not consented to be sued nor waived its immunity from suit, and that under the Eleventh Amendment to the Federal Constitution the Court below was without jurisdiction; that the judgments entered in the removed and remanded causes were *res judicata;* that the complaints were attempts to collaterally attack the orders of the Federal Court in remanding the causes; and that the jurisdiction of the State Court in and for Travis County, Texas, was prior and exclusive.

The Court below, deeming the suits to be suits "against the State of Texas", dismissed them and it is from this order of dismissal that these appeals were taken. Since the same proceedings with the same results were had in the suit filed by the Louisiana & Arkansas Railway Company, the appeals in the two cases were consolidated for record, briefs, argument, and disposition.

At the outset of our consideration we are confronted with the question of whether or not the Court below was without jurisdiction of these suits under the Eleventh Amendment providing that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."

There is much learning, as well as some confusion, as to what constitutes a suit against a state within the interdiction of the Eleventh Amendment. Many cases have been written since the holding in Chisholm v. Georgia, 2 Dall. 419, 1 L.Ed. 440, provoked the prompt adoption of the Eleventh Amendment in order to withdraw jurisdiction from Federal Courts in suits against a state by citizens of other, or foreign, states.

Mr. Justice Frankfurter, in his dissent in Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457,[2] aptly outlined the following categories into which the decisions of the Supreme Court dealing with suits against a sovereign government generally fall:

(1) Cases in which the plaintiff seeks an interest in property which concededly, even under the allegation of the complaint, belongs to the government, or calls for an assertion of what is unquestionably official authority.

(2) Cases in which action to the legal detriment of a plaintiff is taken by an official justifying his action under an unconstitutional statute.

(3) Cases in which a plaintiff suffers a legal detriment through action of an officer who has exceeded his statutory authority.

(4) Cases in which an officer seeks shelter behind statutory authority or some other sovereign command for the commission of a common-law tort.

It is clear that the Railroads do not seek here to establish an interest in property or funds belonging to the State, nor do they call for an assertion of the official authority of the State in their behalf as referred to in Grouping No. 1, nor are the suits based upon any tortious conduct of the Attorney General so as to fall within the fourth classification. The allegations of the complaints assert that the statutes of Texas as construed by the Defendant and sought to be enforced by him constitute an attempt to regulate, and to place an unreasonable burden upon, interstate commerce, in conflict with Federal law, the commerce clause, and the Fourteenth Amendment.

---

2. See also Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014.

The nature of the suits, at this stage, must depend upon the allegations in the complaints, and it seems clear to us that the allegations in the complaints here definitely assert that the acts of the Attorney General are contrary to the Federal Constitution and, therefore, the cases fall into the second or third grouping.

■ The decisions, with great uniformity, hold that a suit seeking to restrain an official from an alleged unconstitutional exercise of power, or from action under a statute that would be violative of constitutional rights when applied in a particular situation, is not a suit against the State, within the purview of the Eleventh Amendment. Among such cases are the following wherein the jurisdiction of the Federal Court to entertain such suits was upheld: Osborn v. Bank of the United states, 1824, 9 Wheat. 738, 6 L.Ed. 204; Board of Liquidation v. McComb, 92 U.S. 531, 23 L. Ed. 623; Poindexter v. Greenhow, 114 U. S. 270, 330, 5 S.Ct. 903, 962, 29 L.Ed. 185, 207; Pennoyer v. McConnaughy, 140 U.S. 1, 11 S.Ct. 699, 35 L.Ed. 363; In re Tyler, 149 U.S. 164, 13 S.Ct. 785, 37 L.Ed. 689; Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; Scott v. Donald, 165 U.S. 58, 17 S.Ct. 265, 41 L.Ed. 632; Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819; Prout v. Starr, 188 U.S. 537, 23 S.Ct. 398, 188 L.Ed. 584; Mississippi R. Comm. v. Illinois Cent. R. Co., 203 U.S. 335, 27 S.Ct. 90, 51 L.Ed. 209; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764; General Oil Co. v. Crain, 209 U.S. 211, 28 S.Ct. 475, 52 L.Ed. 754; Ludwig v. Western Union Telegraph Co., 216 U.S. 146, 30 S.Ct. 280, 54 L.Ed. 423; Western Union Telegraph Co. v. Andrews, 216 U.S. 165, 30 S.Ct. 286, 54 L.Ed. 430; Herndon v. Chicago, R. I. & Pac. R. Co., 218 U.S. 135, 30 S.Ct. 633, 54 L.Ed. 970; Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916D, 545, Ann. Cas.1917B, 283; Greene v. Louisville & I. R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, Ann.Cas.1917E, 88; Public Service Co. of Northern Illinois v. Corboy, 250 U. S. 153, 39 S.Ct. 440, 63 L.Ed. 905; Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375; Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457.

■ We do not think that in order to entertain jurisdiction in this case it would be necessary for the lower Court to hold that the Texas statutes are *ipso facto* unconstitutional or that, as a matter of law, they do violence to the commerce clause or the Fourteenth Amendment of the Federal Constitution in all cases. The Courts of Texas have sustained their constitutionality when applied to railroads doing wholly an intrastate business, unaffected by valid orders of the Interstate Commerce Commission issued pursuant to the commerce clause and the Interstate Commerce Act. We do not undertake to say that there are no situations to. which the Texas statutes may lawfully be applied but that the allegations by Appellants in the complaints do allege acts by the Attorney General and his assistants in contrariety to the Federal Constitution in seeking to enforce the penal provisions of the State statutes in question and that such suits are not suits against the State as proscribed by the Eleventh Amendment. The question to be decided ultimately in these cases is whether or not the Attorney General, in seeking to enforce the statutes and to collect the penalties thereunder, is proceeding contrary to, or in disregard of, the Interstate Commerce Act, the order of the Interstate Commerce Commission, and the commerce or other clauses of the Federal Constitution as alleged by Appellants.

The order of the Interstate Commerce Commission which authorized the Kansas City Southern Railway to acquire control of the railroad and properties of the Texarkana and Fort Smith Railway Company was attacked by the State of Texas before a three-judge Federal Court on the ground that the Interstate Commerce Commission, in the making of said order, transcended the authority granted to it by Congress. When the order was sustained by the three-judge District Court, State of Texas v. United States, 6 F.Supp. 63, an appeal was taken to the Supreme Court of the United

States. By an opinion reported in 292 U. S. 522, 54 S.Ct. 819, 824, 78 L.Ed. 1402, the order of the Commission was sustained.

In that case these same Texas statutes prohibiting any corporation, except one chartered under the laws of that state, from owning operating or maintaining any railroads within the State, and other related acts, were defensively interposed for the purpose of showing that the order of the Commission was contrary to law and not justified by the applicable provisions of the Interstate Commerce Act although the constitutional power of Congress to confer authority upon the Commission to approve the lease of the railroad was not questioned. The Court, holding that such authority had been conferred by statute upon the Commission, stated:

"As we said in State of Colorado v. United States, 271 U.S. 153, 163, 46 S.Ct. 452, 70 L.Ed. 878; 'Prejudice to interstate commerce may be effected in many ways. One way is by excessive expenditures from the common fund in the local interest, thereby lessening the ability of the carrier properly to serve interstate commerce.' Even explicit charter provisions must yield to the paramount regulatory power of the Congress. State of New York v. United States, 257 U.S. 591, 601, 42 S.Ct. 239, 66 L.Ed. 385. Obligations assumed by the corporation under its charter of providing intrastate service are subordinate to the performance by it of its federal duty, also assumed, 'efficiently to render transportation services in interstate commerce.' Colorado v. United States, supra, 271 U.S. at page 165, 46 S.Ct. at page 455, 70 L.Ed. 878. See Transit Commission v. United States, 284 U.S. 360, 367, 368, 52 S.Ct. 157, 76 L.Ed. 342; Transit Commission v. United States, 289 U.S. 121, 127, 53 S.Ct. 536, 77 L.Ed. 1075; State of Florida v. United States, 292 U.S. 1, 54 S.Ct. 603, 78 L.Ed. 1077.

" * * * As thus construed, we find no ground for concluding that the approval of the provision in the lease was beyond the Commission's authority. There is no inter-ference with the supervision of the state over the lessor in matters essentially of state concern, as distinguished from the operations which in their effect upon interstate commerce are of national concern."

So it is that, to the extent of its scope, the grant of authority by the Interstate Commerce Commission to the Kansas City Southern Railway must be considered here as unchallengeable.

The case of Seaboard Airline R. Co. v. Daniel, Attorney General of South Carolina, 333 U.S. 118, 68 S.Ct. 426, 430, 92 L. Ed. 580, is very similar to the cases before us and seems decisive of the main issues here. The State of South Carolina had statutes similar to those of Texas, which prohibited, under heavy penalties, the operation of railroads within the State by corporations not created under its laws. In 1946 Seaboard, with the approval of the Interstate Commerce Commission, had succeeded to the ownership and operation of a large railway system which included some 700 miles of lines running through South Carolina and connecting with its lines in adjoining states. The Railway Company was a Virginia corporation and, therefore, subject to the statute and its penalties if same could validly be applied in disregard of the order of the Interstate Commerce Commission and the Federal statutes. The Attorney General of that State undertook to defend on the ground that insofar as the order of the Commission could be interpreted as an attempt to override the laws of the State it was void because outside of the scope of the Commission's authority. The South Carolina Supreme Court held that the Interstate Commerce Commission lacked power to enter such an order and, moreover, that the Commission's order did not manifest a clear purpose to authorize the exemption of Appellant from obedience to the State's domestic corporation policy.[3] In reference to this contention the Supreme Court, speaking through Mr. Justice Black, held that the Court had no doubt that the Commission intended its order to have the ef-

---

3. This latter contention is made here in reference to the order of the Commis-sion authorizing the Louisiana & Arkansas Railway to take over the L. A. & T.

fect of exempting the railroad from obedience to the contrary state statutes. Following the rule and reasoning laid out in Texas v. United States, supra, the Court reversed the judgment of the State Supreme Court and held that Congress had granted the Commission " 'exclusive and plenary' authority" in refusing or approving railroad consolidations, mergers, acquisitions, and the like, by the Act of 1940, which was enacted after the opinion was rendered in Texas v. United States, supra. Under that Act, according to the Court: " * * * The purchaser of railroad property with Commission approval is authorized by § 5(11) 'to own and operate any properties * * * acquired through said transaction without invoking any approval under State authority,' and such an approved owner, according to that paragraph, is 'relieved from the operation of the antitrust laws and of all other restraints, limitations and prohibitions of law, Federal, State, or municipal, insofar as may be necessary to enable them to carry into effect the transaction so approved * * * and to hold, maintain, and operate any properties * * * acquired through such transaction.' "

The judgment of the Supreme Court of South Carolina denying the injunction and dismissing the complaint was held to be erroneous. This decision is directly in point here.

■ The Federal Government has been given full and exclusive power to regulate interstate commerce. The Constitution and laws of the United States are the supreme law of the land and state statutes that unreasonably burden or interfere with interstate commerce have been stricken down so often as to render citation of instances unnecessary. It has long been familiar law that things which in isolation are purely local may be regulated by Congress if such things have a substantially adverse effect upon interstate commerce. Intrastate freight rates which are discriminatory or have an adverse effect upon inter-

state shipments of freight have been disapproved and held invalid or ineffective in numerous cases, of which State of Florida v. United States, 292 U.S. 1, 54 S.Ct. 603, 78 L.Ed. 1077, is an example. See also Mississippi R. R. Commission v. Illinois Central Railroad Commission, 203 U.S. 335, 27 S.Ct. 90, 51 L.Ed. 209.

■ The construction of the power of the Interstate Commerce Commission in such matters pursuant to the Act of Congress and pursuant to the commerce clause clearly presents a question of which the Federal Courts have original jurisdiction.

The injunction sought is not to stay the State Court of Texas but to enjoin the Attorney General of Texas and his assistants from proceeding with the suits for the collection of the penalties alleged therein to be due, in disregard of the order of the Interstate Commerce Commission and of the Interstate Commerce Act, but even if the Court should decline, in the light of Section 2283 of Title 28 U.S.C.A., to grant a temporary injunction, such refusal would in no wise affect the jurisdiction of the Court to hear and determine the case on the merits.[4] Moreover, if the Court below should determine that the proceeding by the Attorney General of Texas in the State Court is an attempt to set aside, annul, or suspend, in whole or in part, an order of the Interstate Commerce Commission in the State Court, as alleged by Appellants, within the purport of Section 41 (28) [revised § 1336], Title 28 U.S.C.A., conferring *exclusive jurisdiction* in such endeavors upon the Federal Court—according to Seaboard Airline Railway v. Daniel, supra,—he may then consider whether he has the authority to issue a temporary injunction to protect that jurisdiction under the exception in Section 2283, Title 28 U. S.C.A. The granting or refusing of a temporary injunction, not being jurisdictional, the authority to issue, or the propriety of issuing, same in aid of the exclusive jurisdiction of the Court in these cases is unnecessary to a decision in this

---

4. Smith v. Apple, 264 U.S. 274, 44 S.Ct. 311, 68 L.Ed. 678; Sovereign Camp,

Woodmen of the World v. O'Neill, 266 U. S. 292, 45 S.Ct. 49, 69 L.Ed. 293.

case and is a matter that we do not here decide.

We conclude: (1) That the suits were not against the State of Texas, contrary to the Eleventh Amendment; (2) that the complaints did not fail to state a cause of action upon which relief could be granted; and (3) that the Court erred in dismissing the complaints.

The judgment of the Court below is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and Remanded.

DOOLEY, District Judge (concurring).

I concur fully in the holding that the suits filed in Federal court and now on appeal are not suits against the State of Texas and in the judgment of this Court, but with a reservation against joinder in the query on what the trial court may determine as to whether or not the suits in the State court are in effect attempts to set aside, annul or suspend orders of the Interstate Commerce Commission. I am not sure enough that this can be an open question, and mention of it could be unfortunate. The cases seem to make it clear that the present suits in Federal court, although brought to combat an obstruction, are not suits to enforce orders of the Interstate Commerce Commission, within the jurisdictional sense of what used to be U.S.C.A., Title 28, Sec. 41, sub. (27). Seaboard Airline Railroad Company v. Daniel, 333 U.S. 118, 68 S.Ct. 426, 92 L.Ed. 580; Illinois Central Railroad Company v. Public Utilities Commission of Illinois, 245 U.S. 493, 38 S.Ct. 170, 62 L.Ed. 425. Conversely, on a parity of reasoning, I doubt that the suits pending in the State court, as same now stand, can ever properly be deemed suits to set aside, annul or suspend orders of the Interstate Commerce Commission within the jurisdictional sense of what used to be U.S.C.A., Title 28, Sec. 41, sub. (28). The like nature of said jurisdictional statutes, once separate as two subdivisions, is reflected in the fact that same have since been combined and in the 1948 revision of said Title 28 now constitute the single Sec. 1336.