160

ANTONIA ARMSTRONG MAYORAL ET AL., Plaintiffs and Appellants, *v.* JORGE J. JIMÉNEZ, ETC., COMMISSIONER OF THE INTERIOR, Defendant and Appellee.

No. 10551.   Argued November 3, 1952.—Decided December 9, 1952.

*Cayetano Coll y Cuchí* and *Víctor A. Coll*, for appellants.   *J. B. Fernández Badillo*, Acting Attorney General, and *A. Torres Braschi*, Assistant Attorney General, for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Antonia Armstrong Mayoral and her legitimate children filed a petition for injunction in the former District Court of San Juan, on February 10, 1948, against Jorge J. Jiménez, in his capacity as Commissioner of the Interior of Puerto Rico.[1]   They alleged in substance that by deed of January 17, 1916, executed in the city of Barcelona, Spain, their predecessor Luis Rubert Catalá acquired a property known as San Patricio, located in the Monacillos ward of the municipality of Río Piedras, Puerto Rico, having an area of 680 cuerdas, more or less, and gave its boundaries; that said property was segregated by Antonio Ramos Mencos, its previous owner, from a larger property, the remainder of the main property being acquired by Luis Lloréns Torres; that in a suit brought by the People of Puerto Rico against Lloréns Torres, the former alleged that it owned a parcel known as "Manglar de la Punta de Cataño," having an area of 1003.61 cuerdas divided, for administrative purposes, into three parcels, to wit:  numbers ten, eleven and twelve, located in the municipalities of Bayamón, Guaynabo and Río Piedras;  that when Luis Rubert Catalá died, the plaintiffs, in their capacity as testamentary heirs, became the owners of the property first mentioned and that after a survey on July 3, 1923, its area was rectified and determined at exactly 776 cuerdas;  that after said rectification, the plaintiffs segregated and alienated several parcels, thereby reducing the main property to 114.70 cuerdas, which they describe;

---

[1] Due to the fact that Jiménez no longer held that position, the appellants requested from us to substitute him by Roberto Sánchez Vilella.  It was so ordered.

that they have been and are in possession of said property and have exercised and exercise their ownership right thereon without any limitation or encumbrance from the date of acquisition, as their successors in interest (*sic*) did for a period of more than thirty years, under a title duly recorded in the Registry of Property; "that prior to the filing of this complaint, the defendants Jorge J. Jiménez and Admiral Daniel Barbey,[2] by themselves and through their agents and employees, did illegally and violently enter said property and threaten to continue to do so, making surveys and performing acts which disturb the plaintiffs in their possession, alleging that said property is under their administration and custody by virtue of their positions as Commissioner of the Interior of Puerto Rico and Chief of the Navy in Puerto Rico"; that the illegal and violent intervention in plaintiff's property has not been confined to the foregoing acts, but also that the defendants intend by themselves and through their agents to prevent the plaintiffs from enjoying the free use of the property which legitimately belongs to them; and that they lack any other adequate remedy at law to prevent the defendants from infringing their right.

The defendant Jorge J. Jiménez first filed a motion to dismiss the complaint on the ground that: (1) it does not state facts sufficient to constitute a cause of action against him; (2) the court lacks jurisdiction of the subject because he is a public officer and the action is in substance and effect one against the People of Puerto Rico, which has not given its consent to be sued nor waived its immunity; and (3) the service of the summons on the Assistant Commissioner of the Interior is insufficient, inasmuch as it is not an effective service on his superior officer. That motion was denied and thereupon the said defendant answered accepting some of the averments of the complaint, denying others and setting

---

[2] On February 3, 1950, the plaintiffs moved for the elimination as defendants of Admiral Barbey and the United States of America, and on February 6 of that same year the court *a quo* entered judgment in the terms requested.

up the following special defenses: that (1) since it had not been determined by final and unappealable judgment prior to the bringing of this action that the properties involved therein belong to the plaintiffs and that, therefore, the acts of possession and ownership performed by the Commissioner of the Interior on said lands are unconstitutional and invalid pursuant to the provisions of Act No. 1 of February 25, 1946, (Sess. Laws, p. 2), the court lacks jurisdiction to grant the injunction requested; (2) Act No. 76 of 1916 (Sess. Laws, p. 151) gives the plaintiffs an ordinary remedy at law to enforce their alleged rights, wherefore the extraordinary remedy of injunction sought does not lie; (3) the action filed partakes of the nature of a proceeding to retain possession and it does not lie (a) because it was filed one year after the defendant had performed the alleged acts disturbing the plaintiffs in their possession and (b) because this case involves a conflict of title to the property described in the complaint, which may not be discussed or determined in an injunction proceeding; (4) the plaintiffs are guilty of laches; and (5) the property involved herein consists of mangrove swamps belonging to the People of Puerto Rico and prior thereto to its predecessors in title, the government of the United States of America and the Spanish Crown, who obtained them by right of discovery and conquest.

The issue being thus joined and after a pretrial conference, the case was heard. The parties offered oral and documentary evidence and judgment was entered dismissing the complaint, with costs to the plaintiffs. In the course of the opinion delivered in support thereof, the court *a quo* stated that the property involved in this suit consists almost entirely of mangrove swamps and is the same property which appears as parcel number ten in the plan of December 4, 1919, drawn by the Department of the Interior, Division of Public Lands, entitled *"Manglar de El Pueblo de Puerto Rico en la Bahía de San Juan"*; that by proclama-

tion of the Governor of Puerto Rico dated May 28, 1918, parcel number ten was declared, together with other lands, an insular forest under the supervision of the Commissioner of Agriculture and Labor; that the ownership of said parcel was recorded in favor of the People of Puerto Rico on October 29, 1940; that said parcel, together with others, was conveyed by the People of Puerto Rico to the United States of America on November 20, 1940; that save a small portion of 2.36 cuerdas, which they retained for sanitary purposes, the United States returned parcel number ten to the People of Puerto Rico by deed of January 11, 1950; and that from the testimony of the witnesses of both parties it concluded that the People of Puerto Rico, through its officers and employees, as well as the United States, through its naval officers and employees, and the plaintiffs, have been simultaneously in possession of the parcel in question for the last years. The lower court stated in its conclusions of law that the plaintiffs insisted that the litigation ought to be decided pursuant to the cases of *Central Victoria* v. *Kramer*, 35 P.R.R. 168 and 45 P.R.R. 758, which in its opinion, were not applicable, since title to the parcel has for eleven years been recorded in the Registry of Property in favor of the People of Puerto Rico; that the performance by a public officer of an act authorized by law cannot be restrained by injunction, unless it has been determined by final, firm and unappealable judgment, that such act authorized by law is invalid, citing Act No. 1 of February 25, 1946; that injunction is not the proper and adequate remedy to determine rights on real property, especially where the conflict of title raises a serious legal problem; that without deciding which of the two titles is the more valid or preferred, it could say that plaintiffs' title has several weak spots; that the excess in acreage was not recorded until 1922 so that in 1902, the effective date of the Political Code, § 9 of which prohibits acquisition of public lands by prescription, there had elapsed only one of the 30 years needed for the plain-

tiffs to acquire said property by the extraordinary prescription provided by the Spanish Civil Code against the State; that the action could not prosper either as an action of revendication since, according to the complaint, and in accordance with the evidence, the plaintiffs have also been in possession of the property and revendication lies only in favor of the person not in possession of the property in litigation; and that in addition to the fact that no bond was given, the two-year period provided by Act No. 76 of 1916, as amended, had already expired.

The plaintiffs appealed. They claim that the trial court erred in declaring: (1) that this is a suit against the People of Puerto Rico and that since the consent of the People had not been obtained the complaint should be dismissed; (2) that the performance by a public officer of an act authorized by law can not be restrained in the instant case, because it has not been determined by final, firm and unappealable judgment that such act authorized by law is invalid; (3) that injunction is not the proper and adequate remedy; (4) that the plaintiffs could not acquire title by prescription, inasmuch as the mangrove swamps in question presented an excess in area in the original property; and (5) in dismissing the complaint.

In the lower court, as well as in his brief on appeal, plaintiffs lay great emphasis on the scope and effect of our opinions in the cases of *Central Victoria* v. *Kramer*, *supra*. While discussing them, he insists that in them "it was conclusively decided, and is so held by all the jurisprudence, that a suit brought against a public officer because of illegal actions of the public official carried out under the cloak of his authority is not a suit against the sovereign." Let us look into that:

In the first of those cases, Central Victoria filed before the former District Court of San Juan a petition for an injunction in which, after describing certain lands belonging to and being in the possession of the complainant, it alleged

that Kramer, his agents and employees had violently entered the land, cutting timber and authorizing other persons to take firewood therefrom, and that to give color to the acts so performed, the defendant claimed that the said lands fell under his custody and administration as Chief of the Forest Service of Puerto Rico. In response thereto, the Attorney General filed a document entitled "Special Appearance and Motion to Dismiss," stating that Kramer appeared especially for the sole and only purpose of attacking the jurisdiction of the court over the person of the defendant and praying for a dismissal because the complaint directed against the Chief of the Forest Service in his official capacity was in fact an action against the People of Puerto Rico, and the latter had not given its consent to be sued. After stating in the course of its opinion that there are two lines of decisions, *one of them in its essence holding that "when a defendant is truly acting in his representative capacity as the agent of the government his acts are to be considered as the acts of the government";* and the other that "when an agent acts tortiously he can not defend himself behind the shield of his supposed official authority," this Court stated: *"In the case before us it is necessarily admitted that the complainant is the owner and possessor of the described lands. Acts of trespass are alleged against the defendant. It is also conceded that he claims a right to the lands by virtue of his official capacity. The mere claim of the defendant does not derogate from the said admitted possession of the complainant."* It went on to say that the appearance of the Attorney General did not so derogate; that his appearance was special *and set up no fact in opposition to the said admitted possession;* that were the acts of the defendant really tortious, he could derive no benefit from the fact that his counsel was the Attorney General; *that he carefully avoided making any claim for the People of Puerto Rico, except that it may not be sued save by its own consent;* that what the complaint charged were tortious acts of Kramer in the lands

of the complainant, and that the mentioning of his official title was only a *descriptio personae;* that the complainant claimed possession, and that the case fell within the line of decisions which afforded no protection to an agent because of the fact that he is an official. It further said, *that an official is protected when it duly appears that his acts are a necessary outcome of his official duties.* In view of the foregoing, the judgment appealed from was reversed and the case remanded for further proceedings. The case having been tried again on its merits, the District Court rendered judgment for plaintiff. The defendant having appealed, we rendered the opinion which appears in 45 P.R.R. 758. In that opinion we held that the People of Puerto Rico, successor of the Spanish Crown to the ownership of public lands in Puerto Rico, was now precluded from contesting the ownership of the parcel of land in dispute in the suit and the judgment appealed from was affirmed.

As stated above, in the first of the cases cited defendant Kramer challenged the Court's jurisdiction to entertain the complaint brought against him, as in his judgment it was a complaint against the sovereign. We decided that the document filed necessarily admitted that the Central was the owner of the lands that were the object of the suit, but we clearly and emphatically stated that *when a defendant really acts in his representative capacity as an agent of the government his acts must be considered as the acts of the government.* To that effect see also *Fajardo Sugar Growers Ass'n* v. *Kramer,* 45 P.R.R. 337 and *Miguel* v. *Benedicto, Treasurer of P. R.,* 28 P.R.R. 705. In the first of the two cases we said at page 346 that "Although in the instant case it was alleged that the defendants forcibly entered upon the land in question, an averment which places the case among those involving personal acts, in reality *the answer sets forth facts which, if true, would place it in the line of cases wherein the courts are convinced that it is not the person who, availing himself of his office, acts and in-*

*vades the rights of citizens, but the government itself who intervenes through its officers when the latter act in the exercise of their authority and in the discharge of their duties."* (Italics ours.) And later, referring to the case of *United States* v. *Lee*, 106 U. S. 196, 27 L. ed. 171, we said as follows at page 350:

"*. . . . . where the defense set up by the officer reveals that he is acting within his legitimate powers, it being evident that the state is the only real party in interest, and that the right of the. state is not a mere pretension but has a real basis, then there is no invasion of the right of the citizen by the officer, and the general rule should be applied acknowledging that the state can not be sued without its consent, and the action should be dismissed after going into the merits thereof for the purpose of judging the conduct of the officers.*" (Italics ours.)

Such is precisely the case at bar.

The doctrine laid down in *United States* v. *Lee, supra,* has been considerably limited. There, the government of the United States brought distraint proceedings for nonpayment of real property taxes. The property was sold at a tax sale —that land today comprises nearly all of the National Cemetery of Arlington—and bid off to the United States at the tax sale. Years later, an heir of the original owner of the land instituted proceedings to recover possession of the land. It was decided that as the right of the plaintiff to the land in question was perfectly clear, the action was, consequently, one against the officials that were in possession and not against the sovereign.

However, in a lengthy opinion delivered in *Larson* v. *Domestic & Foreign Corp.*, 337 U. S. 682, 93 L. ed. 1628, the Supreme Court of the Nation said:

"Said case (*United States* v. *Lee*) represents, rather, a specific application of the constitutional exception to the doctrine of sovereign immunity. The suit there was against federal officers to recover land held by them, within the scope of their authority, as a United States military station and cemetery. The question at issue was the validity of a tax sale under which the United States, at least in the view of the officers, had ob-

tained title to the property. The plaintiff alleged that the sale was invalid and that title to the land was in him. The Court held that if he was right the defendants' possession of the land was illegal and a suit against them was not a suit against the sovereign. *Prima facie,* this holding would appear to support the contention of the plaintiff. Examination of the *Lee* case, however, indicates *that the basis of the decision was the assumed lack of the defendants' constitutional authority to hold the land against the plaintiff.*

"The Court thus assumed that if title had been in the plaintiff the taking of the property by the defendants would be a taking without just compensation and, therefore, an unconstitutional action. *On that assumption, and only on that assumption, the defendants' possession of the property was an unconstitutional use of their power and was, therefore, not validly authorized by the sovereign. For that reason, a suit for specific relief, to obtain the property, was not a suit against the sovereign and could be maintained against the defendants as individuals.*

"The *Lee* case, therefore, offers no support to the contention that a claim of title to property held by an officer of the sovereign is, of itself, sufficient to demonstrate that the officer holding the property is not validly empowered by the sovereign to do so. *Only where there is a claim that the holding constitutes an unconstitutional taking of property without just compensation does the Lee case require that conclusion.* The cases which followed Lee's do not require a different result. There are a number of such cases and, as this Court has itself remarked, it is not "an easy matter to reconcile all the decisions of the court in this class of cases." *With only one possible exception, however, specific relief in connection with property held or injured by officers of the sovereign acting in the name of the sovereign has been granted only where there was a claim that the taking of the property or the injury to it was not the action of the sovereign because unconstitutional or beyond the officer's statutory powers. Certainly, the Court has repeatedly stated these to be the cases in which such relief could be granted."* (Italics ours.)

See also *Fay* v. *Miller,* 183 F. 2d 986, and *Kansas City Southern Ry. Co.* v. *Daniel,* 180 F. 2d 910. We are in complete agreement with the view thus stated.

In the present case the defendant not only alleged in the answer that the property involved herein consisted of mangroves that belonged to the People of Puerto Rico, but also offered evidence tending to show that it was actually so. On the other hand, there was no allegation or any evidence to the effect that the act of the People of Puerto Rico was unconstitutional or in excess of the statutory authority vested in the Commissioner of the Interior of Puerto Rico. Under these circumstances, we must forcibly conclude that the case at bar was an action against the People of Puerto Rico rather than against Jorge J. Jiménez in his private [3] character. Not being the People of Puerto Rico a party in the case nor having consented to be sued in cases of this nature, the action clearly should have been dismissed.

Having reached the conclusion that the instant case is one against the People of Puerto Rico, it is unnecessary to discuss the second error assigned.

■ As we have seen, the defendant not only alleged that the land in question belonged to the People of Puerto Rico, but also submitted evidence to show that it was recorded in the latter's name. It is a well-known principle in law that injunction does not lie when the plaintiff's title is doubtful. *Rivera* v. *Colón*, 62 P.R.R. 50; *A. Rojas & Co., Inc.* v. *Luna*, 39 P.R.R. 756; *Municipality of Comerío* v. *Rivera*, 34 P.R.R. 393; *Martínez et al.* v. *Soto*, 32 P.R.R. 559; *Succession of Pérez* v. *Marquez*, 19 P.R.R. 692; *González* v. *Collazo*, 14 P.R.R. 825. Under the foregoing circumstances the trial court did not err in declaring that injunction was not the proper remedy in this case.

■ An appeal is taken from the judgment and not from the grounds thereof. *Varela* v. *Fuentes*, 70 P.R.R. 838; *Ri-*

---

[3] In n.1 we stated that the appellants requested to have Roberto Sánchez Vilella as defendant instead of Jorge J. Jiménez and that we so ordered. This was tantamount to an admission that the suit was not against any person in particular but rather against the person who was holding the position of Commissioner of the Interior and that it was, therefore, a suit against the sovereign.

*vera* v. *Hernández*, 70 P.R.R. 521. Therefore, even though given the nature of the proceeding under its consideration the trial court erred in stating in its opinion that the plaintiffs could not acquire title by prescription, such is not, however, a reversible error.

Taking the foregoing into consideration the trial court did not err either in dismissing the complaint.

If at this stage the plaintiffs can successfully file against the People of Puerto Rico a revendicatory action, a declaratory judgment or an action to cancel the title that the People of Puerto Rico obtained by virtue of dominion title proceedings is something that is not now before us and what is more none of our concern.

For the foregoing reasons, our opinion and judgment of September 15, 1952 will be set aside. Instead a new judgment will be entered affirming the judgment appealed from.

Mr. Justice Negrón Fernández did not participate herein.